May it please the court, my name is Stephanie Adraktis and I represent Jerry Cavins. Cavins' claims were timely filed because the statute of limitations did not commence in this case until at the earliest the expiration of the time to appeal from the final order reconfining him under the California statutes. Because the state court record is incomplete, we don't know when that final order was issued or if the state trial court even complied with its duty to hold a hearing as to Cavins' confinement when it received the final report of record in 2003. The last known civil commitment report was issued to the Glenn County Superior Court in September of 2003. Under California Welfare and Institutions Code 6327, the trial court should have issued an order continuing or terminating his inpatient detention at some point after that. Cavins' federal habeas petition was first filed in April 2003, some months before the final inpatient progress report. In Martin v. Bartow, the Seventh Circuit held that in a similar case, the statute of limitations runs from the last order continuing civil confinement so long as the court continued to revisit the initial justification for the petitioner's recommitment to a state hospital. Kagan. Well, Counsel, I mean, I just ask, since your time is so limited, you question what the last order was. How is it possible that your client didn't know that the periodic reviews were not to reassess whether he was a mentally ordered sex offender, but simply to catch up on his progress and see if any changes should be made? Well, there's two responses, Your Honor, to the question. One is that under 6327 of California Welfare and Institutions Code, which is reproduced in my brief as it has been revealed, under that statute, the court was not required to hold the hearings every six months. If one reads it closely, the duty to hold the hearing is triggered when the court may in its discretion order a progress report or if the person who's detained asks for a hearing. And so Mr. Cavens was not represented by counsel, didn't know what his statutory rights were from November of 2000 on. And also under the statute, it's a no statute, 6316, which says that there should be periodic reviews. There should be a report, but 6327 is the one that requires a hearing and what required him to be brought to court. And according to the final known report, which is the September 2003, states that it's being submitted to the court under 6327. That's the only clue I was able to gain as to what statutory authority was being And that's in the text of the September 2003 report. Under that statute, there must be a hearing if the report, once the report is issued to court, the procedural protections under the remaining statutory sections, 6303 to 14, come into play. Mr. Cavens was entitled to the appointment of counsel. He was entitled to have a hearing and to have independent psychologists or psychiatrists appointed to render an opinion as to whether or not he could be maintained or should be maintained in the hospital or whether his status as an MDSO was an issue. What case is your best case that he has all of these Sixth Amendment rights each time the periodic report comes to the court? The two cases cited in the brief, Speck v. Patterson and Kansas v. Hendricks, both emphasize that a person in Mr. Cavens's position who's facing indefinite detention under civil confinement is entitled to the due process protections, including appointment of counsel. As a practical matter as well, he had a statutory right to appointment of counsel under 6303 and those subsequent statutes that set forth the requirements for the hearing. This is you keep calling it a hearing. Correct me. I thought that this was just a report that was sent from the staff to the judge. There's no hearing in open court. Do you? Is there? Your Honor, that's where 6327 of the California Welfare and Institutions Code comes into play. That report in September 2003, once it was issued, if one looks at the statute, it says the court shall give notice of the hearing date, et cetera, and goes on to describe the requirements for the hearing, including those other procedural protections. So the case that outlines that and identifies the statute you have and says that he has the six-minute right is which case? Your Honor, the Federal constitutional cases are Speck. No, no, no, no, no, no. I didn't ask for that. The case that identifies the proposition you're advancing to us right now, that in this situation, with this type of report, he has that Sixth Amendment right. Your Honor, Speck and Hendricks both discuss civil confinement and whether or not this being a civil confinement, our position is that he was entitled, like the Petitioners in Hendricks and Speck, to an attorney. So there's not a case directly on point? Not dealing with the MDSO statute under California law, which is a repealed statute long ago. So, but our position would be that because Mr. Cavens was civilly confined in the same way as those Petitioners, that he had a right to counsel under the Due Process Clause. Does he have to ask? Your Honor, under the statutory scheme, no, he doesn't. He's entitled to appointment of counsel just like a criminal defendant. I know, but a criminal defendant has to ask for counsel. They don't automatically get it. You can go pro se if you want. Your Honor, you can if you want, but under the statute, actually, in 6327 in the statutes, it's references. The Petitioner does not go without counsel at a 6327 hearing unless he says that he wants to represent himself. He was entitled to have counsel under the California scheme, and, you know, our argument is that as to the substance of his claims, we're not drifting away from the statute limitations question. So your argument, your argument, if I understand it, is that the court must do this sua sponte, and your client, even though your client doesn't know anything about what's going on at all, he's still entitled to this lawyer in this type of hearing. Your Honor, we would we believe that the fact that he didn't know what was going on was part and parcel of the constitutional violation. That wasn't my question. Yes. He was entitled to know what was going on. He was entitled to have a lawyer, even if he didn't know that they were holding a hearing. That is seems to be the basic requirements of due process, that if someone's going to be confined indefinitely. Yeah. But there's no California case interpreting it that way, as I understand it. We would have to make that interpretation? I was able, in looking at the statute and the – it's a repealed statute, so these are old cases, but I was able to locate one case interpreting 6327, which is People v. Guzman. I can supply that citation in a letter to the court, if the court would like that. But that is the only case I was able to find where it even discussed the kind of the procedures. Because the statute has been repealed for so long, we don't have much authority interpreting that section. Do you wish to keep some time for rebuttal? I'm sorry, Your Honor. Do you wish to keep some time for rebuttal? I do, Your Honor. Thank you. Good morning. May it please the Court. Christina Hitomi Simpson on behalf of the Respondent. I'd like to start out by discussing how the record refutes Petitioner's claim that he had no idea that these periodic review hearings were going on, and that he did not know that he was not represented by counsel following 2000. Were there really hearings, or were there simply reports? There were reports. There were review hearings, one that occurred in 1997 and one that occurred in 1998. Were there hearings? Were there hearings in open court? No. There was only one in 1997. That's right. Your Honor, excuse me, counsel. Then how why should he have been expected to know about the reports? He didn't have counsel. There were no hearings. Well, the reports were required, as counsel mentioned, under former California Welfare and Institution Codes, Section 6316B. Under that provision, at six-month intervals, the medical director of the facility where he was being ---- I understand that they were required. My question was, how do we know that he even knew those reports were being made? He kept making inquiries and asking someone to tell him what was happening, and he got no reply. As a practical matter, before each report was filed, he was interviewed by the medical staff at the facility, and he asked questions about his progress for recovery and, in this case, his refusal to attend sex offender treatment classes. The purpose of those reports, which is illustrated throughout the text of them, was to assess whether or not he could be released. In the event the medical director decided that he could be released or could no longer benefit from treatment, under then, they would issue an opinion, which is under Section 6325A or B. And after that point, then Section 6327 would kick in, which is where there's an actual hearing where evidence is presented, such that he would need to have been appointed an attorney. In that case ---- I understand what you just said, that he was interviewed before the reports were made. Is there anything in the record to show that during those interviews he was told we're going to make a periodic report, therefore we are interviewing you? Nothing in the record that I can recall offhand. Right. There's nothing that I could find. One thing that I ---- How about an excerpt from Record 56, where in the report to the judge, the staff person said, this writer approached Mr. Calvin for an interview regarding his periodic summary report. Mr. Calvin's politely and respectfully declined, stating, quote, I'd rather not talk to anyone regarding my status, close quote. It certainly isn't a direct statement that apparently there's ---- Yes, Your Honor, absolutely. Do you have anything stronger than that that would indicate that he was being advised that he could ---- of the periodic report and his rights? Well, one thing that I did find that was of interest was that in ---- after he filed his ---- in regards to his representation by counsel and whether or not he knew that he was receiving these hearings and these reports, in May of 2000, he filed his Marsden motion, and then a month later, he filed a document, a motion requesting leave to file a late claim in superior court. And he filed that motion improper and then came to court and represented himself at the hearings. So as of May 2000, he knew that he was no longer represented by counsel and that, you know, in the subsequent documents that he filed, it stated that he was not represented by an attorney, that he'd like to get his appeal off the ground, and that the fact that he was being interviewed, you know, for these hearings that were ---- or that these reports were occurring at six-month intervals, I believe the record as a whole shows that he knew that they were indeed occurring. How does that show that? I mean, it shows that he appeared proper and he made filings in the court. How does that show his knowledge of the periodic reports? I don't have the citations. I have them over there. It's the exact excerpts of the record. But in numerous portions of these periodic reports, he has stated to the medical director that he was interviewing him, that he was, you know, that he was seeking to file an appeal, that, you know, he was getting this appeal off the ground and that, you know, he ---- I think as a whole, although he doesn't say it directly, I know that these six-month reviews hearings are occurring. And one, I believe he said he wanted to represent himself and get a new attorney appointed for his upcoming review. So he knew that these things were occurring. Additionally, he had ---- this was his fourth stay in Atascadero. He had previously been there for three separate stays. And he had been represented by Mr. Benson, his defense attorney, since 1972. So none of this was new to him. He had been through this Atascadero process numerous times before. Additionally, defense attorney has cited a couple of cases that I'd like to distinguish, Magwood and Martin v. Bartow. In the Seventh Circuit rule in Martin v. Bartow, the statute of limitations had not expired where the habeas petitioner was challenging his continued commitment as a sexually dangerous person rather than his initial commitment. And that in Martin, the state court re-decided and knew each year, basically it went back to its initial decision and reviewed that determination that he was a sexually violent person, whereas in contrast here, Kavens, the court never revisited its initial decision and redetermined or determined those facts. In contrast, the reports here were directed at the issue of whether or not he was still a danger to the community. And they were filed in six-month increments to determine whether there had been any changed circumstances. And again, that was under Section 6316B. The hearings on those reports were not mandatory. They were an optional thing under the state statute and would only be the formal hearing would not occur unless it was based on an opinion by the medical director that the defendant should either be released or that he could no longer benefit from continued treatment. And that in this case did not occur. Rather, his expiration of his term, his maximum term of confinement expired in August 2004 and he was just released. Let's see. Oh yes, one more thing I'd like to point out is that in the June 12, 1998 periodic report in regards to claims two and five, Petitioner reported that at that point, as in April of 1998, he was already considering filing an appeal and that he had reported that he thought the judge and CONRAC had been, that he was having them investigated and he was considering filing an appeal based on a conflict of interest. He added that he was waiting to find out what his investigator comes up with. And this is from Exorcist Record 82 to 83. And I just wanted to point out that point in regards to the equitable tolling issue and that Petitioner knew that he had these rights to appeal even before the one-year statute of limitations expired. This occurred back in April of 1998. And it showed that he knew that he had the right to appeal and that he had an investigator already looking into his claims. And if there are no further questions, I'll be willing to submit. Thank you. Thank you, Your Honor. This case raises the issue of attorney abandonment, which has been discussed recently in Holland v. Florida as well as Maple v. Thomas. And the same kinds of arguments that the government is making here to suggest that, of course, well, you know, the person's confined or they're a defendant, they must know they have some generic right to appeal or they must have some general sense that they have some kind of rights. Those arguments failed in those cases where the court found that when the attorney abandons the client, that the client cannot be held to defaults in procedure that he or she realistically thought that the attorney was taking care of. In this case, Mr. Cavens filed his motion for substitution of counsel under People v. Marsden, a California case. He didn't ask to proceed on his own, and he was fully expecting to get another lawyer. He wrote letters to the court asking, what happened to my Marsden motion? What's the ruling on my motion? The court never responded to him. Under those circumstances, one cannot say that he knew he was pro se or that he knew that he had some procedural rights that no one had advised him of. By the time he took the actions that the government's talking about here, his right to appeal had been defaulted by his lawyer long ago, and he was left struggling to try to even get a copy of his court file. He was unable to do that. It was sealed. I can only speculate that that's the reason they didn't give it to him. And that's a civil commitment, right? Yes, Your Honor. Why does he have a right to an attorney? Under SPECT and under Kansas v. Hendricks, those are the two cases that discuss the due process right to counsel when one is going to be ---- It's not a Sixth Amendment right. It's a due process. It references ---- Why is it a due process right to have an attorney to know what the law is? Your Honor, one, I could make the argument that the right to counsel must include the right to effective assistance of counsel, and that's Strickland. I understand that's a Sixth Amendment case, but it seems as though the right to counsel would have no substance at all under the due process laws or the Sixth Amendment. My question is probably a more basic one. If it's a civil commitment action, what is the case, Supreme Court case, that says that he has a right to counsel? Under SPECT and Kansas v. Hendricks, there's a due process right to counsel. As the government has pointed out, Mr. Cavens was held in a ---- SPECT and Hendricks. Yes, Your Honor. They're cited in the briefs. The ---- Mr. Cavens was held in a prison-like sentence until the expiration of the maximum possible term that anyone could serve. And under those circumstances, when one's liberty is confined to that degree, one has the right to counsel. Do you ---- do you take the position ---- someplace you ought to take the position, I suppose, that if he knows enough about it, he should have done something about it himself. And the question comes up, during the time he was represented by counsel, was he aware of these periodic reports? Your Honor, he was not aware that periodic reports, when they were being issued, under what statutory authority they were being issued. I didn't have a statutory authority. My question is a very simple one. My question is, what tells us in this record that he knew or did not know, of these periodic reports, during the time he was represented by counsel, and he could assume that they would continue? In his declaration, he discusses the fact that he did not receive any communications from his lawyer and didn't know what was going on with his case. That is something that he said, but it doesn't match the point. The reason I'm concerned, there doesn't seem to be a joinder between the two sides here. I notice counsel said, wasn't prepared to look in the record for certain questions. But I suppose what you do ordinarily is you look at the briefs and see what the issue is. And neither in your opening brief or your reply brief do you contend that Kavins did not know about the periodic review hearings conducted during the time. Excuse me, I haven't answered this. I haven't asked my question. Periodic review hearings conducted when Kavins had counsel. That argument is never made. Ordinarily, that argument is waived if it's not made in the briefs. During the period that Mr. Kavins was represented by counsel, which from 97 to 98, apparently Mr. Benson was still representing him, he received no communication from Mr. Benson except what I submitted in the record. He also, I submitted in the record the letters that he wrote to Mr. Lee begging for any information. Now, let's get back to my question. Am I correct that neither in your opening brief or your reply brief did you contend that Kavins did not know about the periodic review hearings conducted when Kavins had counsel? Yes or no? It doesn't explicitly say that. However, I submitted in the excerpts of record much evidence that Mr. Kavins did not know what was going on. You say it doesn't explicitly say it. You're saying you said something like it. Where in your opening brief or your reply brief do you alert counsel that this is an argument by making it at that time? You understand it's waived if you haven't made it. I understand, Your Honor. In looking at this case and comparing it, for example, to Hollins v. Florida, there of course, and in Maples too, both of those people knew in a generic way, yes, my case is a case that's been filed in court. There are things going on. But I don't know what they are in particular because I'm confined and no one is communicating with me about them. I guess your answer is that neither in your opening brief nor your reply brief did you make the contention that he did not know about the periodic reviews during the time he had counsel, correct? Your Honor, it does not say that. Thank you. And I would submit. You have four minutes over your time. Oh, thank you, Your Honor. Thank you very much. All right. The case of Cavins v. Hunter will be submitted.
judges: Wallace, Nelson, Bea